NEW ENGLAND MORTGAGE
SERVICES COMPANY, INC.

v.

Catherine PETIT.

Supreme Judicial Court of Maine.

Argued Jan. 3, 1991.
Decided May 9, 1991.

Ernest Babcock and John G. Connor (orally), Friedman & Babcock, Portland, for plaintiff.

Ronald Caron, Caron & Sullivan, Biddeford and David D. Farrar (orally), Professional Resource Associates, P.A., Portland, for defendant.

Before McKUSICK, C.J., and
ROBERTS, WATHEN, GLASSMAN,
CLIFFORD and BRODY, JJ.

GLASSMAN, Justice.

 The plaintiff, New England Mortgage Services Company (New England Mortgage), appeals from a judgment of the Superior Court (York County, *Perkins, J.*) affirming the District court (Biddeford, *Henry, J.*) in its dissolution of a judgment lien on any proceeds that might be derived from a pending action by the defendant, Catherine Petit, against third parties. We hold that the statute controlling the enforcement of money judgments, 14 M.R.S.A. §§ 3120–3137 (1980 & Supp.1990), does not authorize the District Court to grant a lien on the proceeds of a tort claim by Petit against parties unrelated to New England Mortgage. Accordingly, we affirm the dissolution of New England Mortgage's lien on Petit's pending legal malpractice action.

New England Mortgage obtained judgments of $245,304.27 and $78,567.81 in two actions against Petit and then sought disclosure of Petit's assets in the District Court pursuant to 14 M.R.S.A. § 3122 (Supp.1990). Petit disclosed as her only asset the legal malpractice claim that she and other co-plaintiffs had pending in the Superior Court against parties unrelated to New England Mortgage. The District Court granted a lien on the proceeds of Petit's pending malpractice action, which it

later dissolved on Petit's motion for its dissolution. From a judgment of the Superior Court affirming the District Court's dissolution of the lien, New England Mortgage appeals. The sole contention of New England Mortgage is that under the provisions of 14 M.R.S.A. § 3131 (Supp.1990) the District Court was authorized to issue a valid lien to New England Mortgage, and the court erred in dissolving the original lien. We disagree.

■ District Court procedures for the enforcement of money judgments are prescribed by statute.[1] 14 M.R.S.A. §§ 3120–3137 (1980 & Supp.1990). The statute provides that the court may make a turnover order that transfers items of a debtor's property, not exempted by statute from attachment or execution, to a judgment creditor. 14 M.R.S.A. § 3131(1) (Supp. 1990). Alternatively, if an item of a debtor's property is worth more than a creditor's judgment, the court may issue a sale order and a portion of the proceeds may be used to satisfy the judgment. *Id.* § 3131(2). A turnover order or sale order constitutes a lien on the specified item of a debtor's property and, if the debtor disposes of the item after entry of the order, on the proceeds of that disposition to the extent that a secured party would have an interest in proceeds under Article 9 of the Uniform Commercial Code. *Id.* § 3131(9) (Supp.1990).[2] A party can perfect an interest in proceeds only under circumstances permitting an Article 9 security interest. 11 M.R.S.A. § 9–306(3) (Supp.1990).[3] Article 9 does not provide a security interest in "[a]ny claim arising out of tort." *Id.*

1. The statutory enforcement procedures are not exclusive. 14 M.R.S.A. § 3120 (Supp.1990). The Legislature also has made a general provision that "[a]ll chattels, real and personal liable at common law to attachment and not exempted therefrom by statute, may be taken and sold on execution as prescribed in this subchapter and [§§ 5001–5006]." 14 M.R.S.A. § 4751 (Supp. 1990); *see also id.* § 4151 (related provision authorizing attachments). A chose in action, such as Petit's pending malpractice action, is not listed as an exemption from execution by the provisions of 14 M.R.S.A. §§ 4421–4426 (Supp. 1990). *But see id.* § 4422(15) (exemption of $400 for "any property" of a debtor). Under the common law, however, a chose in action is beyond the reach of attachment and execution. *See Martel v. Bearce*, 311 A.2d 540, 544 (Me. 1973). Thus, New England Mortgage must find authority for its lien, if any, in the specific statutory provisions for enforcement of money judgments.

2. 14 M.R.S.A. § 3131(9) provides:

**Lien.** An order entered pursuant to this section shall constitute a lien against the property which is the subject of the order and against the proceeds of any disposition of the property by the judgment debtor which occurs at any time after entry of the order. The lien shall extend to proceeds of any disposition of the property, real or personal, subject to the lien of the judgment creditor to the extent that a secured party would have an interest in the proceeds under Title 11, section 9–306. The lien shall be for the full amount of the unpaid judgment, interest and costs, and shall become perfected as to 3rd parties on the earlier of:

A. The time the judgment creditor or purchaser takes possession of the property;

B. If the property is real estate, the time when an attested copy of the turnover or sale order is filed with the registry of deeds where a mortgage would be filed to be duly perfected;

C. If the property is personalty against which a security interest may be perfected by filing pursuant to Title 11, the time when an attested copy of the turnover or sale order is filed with the filing officer where a filing would be required under Title 11, section 9–401;

D. If the property is a motor vehicle for which a certificate of title is required, the time when an attested copy of the turnover or sale order is delivered to the office of the Secretary of State where notice would be delivered pursuant to Title 29, section 2374, subsection 1; or

E. If the judgment creditor or purchaser takes possession of the property, or if an order is recorded, filed or delivered pursuant to this subsection during the pendency of any properly perfected prejudgment or post-judgment attachment obtained in the underlying action, or any judgment lien created pursuant to section 4651, the time when the attachment or lien was duly perfected against the property.

The evident purpose of section 3131(9) is not to expand the category of property subject to a turnover or sale order but rather to hold accountable a judgment debtor that disposes of property in an attempt to evade such an order.

3. Section 9–306(3) provides in pertinent part:

Except as provided in this section and in Article 8,[ ] a security interest in proceeds can be perfected only by the methods or under the circumstances permitted in this Article for original collateral of the same type.

§ 9–104(11) (Supp.1990).[4]

We do not decide in this case whether a judgment creditor is foreclosed from obtaining a lien on the possible proceeds of other types of pending suits. Here, Petit's legal malpractice action clearly is a claim arising out of a tort. Petit could not grant a valid lien on such a claim under Article 9, and section 3131 provides a lien on the proceeds of a debtor's property only in accordance with Article 9. Therefore, we hold that New England Mortgage cannot obtain a judgment lien on the unrealized proceeds of Petit's pending malpractice claim under the terms of section 3131.[5]

■ Nor can New England Mortgage obtain a lien on the proceeds of Petit's pending action under the common law. Petit could not voluntarily assign her malpractice action to New England Mortgage because the latter has neither the intimate connection nor the clear interest in the claim necessary to become a party to that action. *Thurston v. Continental Casualty Co.*, 567 A.2d 922, 923 (Me.1989). If such an interest cannot be assigned voluntarily, then it cannot be attached. *See Wilde v. Mahaney*, 183 Mass. 455, 460–61, 67 N.E. 337 (1903). Further, as a chose in action, Petit's pending action is not subject to attachment or execution at common law.[6] *Smith v. Kennebec & Portland R. Co.*, 45 Me. 547, 548 (1858); *see Maine Fire and Marine Insurance Co. v. Weeks*, 7 Mass. 437, 438 (1811) (negotiable notes not subject to execution); *Sharp v. Clark*, 2 Mass. 91, 93 (1806) (sheriff's execution not subject to execution); 6 Am.Jur.2d *Attach-*

*ment and Garnishment* §§ 126–27, 132, 135 (1963).

The entry is:

Judgment affirmed.

ROBERTS, WATHEN and CLIFFORD, JJ., concur.

McKUSICK, Chief Justice, with whom BRODY, J., joins, dissenting.

I disagree with the court's conclusion that a chose in action cannot be reached by a turnover order issued pursuant to the statute on enforcement of money judgments, 14 M.R.S.A. §§ 3120–3137 (1980 & Supp.1990). The plain language of section 3131, governing turnover orders, allows New England Mortgage Services Company (New England Mortgage) to obtain a turnover order on Catherine Petit's pending legal malpractice suit.

Section 3131(1) provides that the procedure by which the District Court issues a turnover order after a judgment debtor discloses assets:

When it is shown at a hearing ... that the judgment debtor owns *personal property or real property which is not wholly exempt from attachment or execution pursuant to sections 4421 to 4426*, the court shall determine the value of the property or interest and the extent to which the property or interest is exempt. Upon request of the judgment creditor, the court shall order the judgment debtor to turn over to the judgment creditor in partial or full satisfaction of the judgment, interest and costs, such items of property which are not in whole

---

**4.** Tort claims are excluded from Article 9 because they "do not customarily serve as commercial collateral." 11 M.R.S.A. § 9–104(11) (U.C.C. Comment 8) (1964); *see Bluxome Street Assoc. v. Fireman's Fund Ins. Co.*, 206 Cal.App.3d 1149, 1156, 254 Cal.Rptr. 198, 202 (Cal.Ct.App. 1988). A security interest can be granted in a tort claim only where permitted by common law. *Israel Discount Bank Ltd. v. Gottesman*, 544 F.2d 80, 82 (2d Cir.1976); 1 G. Gilmore, *Security Interests in Personal Property* § 10.7, at 316 (1965).

**5.** New England Mortgage does not contend that it is entitled to a lien under the trustee process for enforcement of money judgments provided

by a related section, 14 M.R.S.A. § 3127–A (Supp.1990). Accordingly, we do not decide whether section 3127–A has any application to Petit's pending malpractice action.

**6.** *Northeast Bank N.A. v. Crochere*, 438 A.2d 266 (Me.1981), is not to the contrary. In *Crochere*, we assumed without deciding that a debtor's pending tort claim was at common law considered exempt from a creditor's judgment lien. We concluded that even if a lien granted by the District Court on such a pending tort claim was invalid, it still could be challenged only by a direct appeal, not by a collateral attack. *Id.* at 268.

or in part exempt and the value of which is determined to be less than or equal to the amount owed on the judgment, interest and costs.

(Emphasis added) The only property that need not be turned over to a judgment creditor is property that is exempt from attachment and execution pursuant to 14 M.R.S.A. §§ 4421–4426 (Supp.1990). Those sections offer no protection from a turnover order for Petit's pending cause of action for legal malpractice. A plaintiff's property interest in a pending malpractice action is omitted from the "legal awards" listed in section 4422(14) the right to receive which are exempt from attachment, whereas the right to receive other types of legal awards are explicitly included in the list of property exempt from attachment:

§ 4422. **Exempt property**

The following property is exempt from attachment and execution ...:

14. **Legal awards; life insurance benefits.** The debtor's right to receive or property that is traceable to the following:

A. An award under a crime victim's reparation law;

B. A payment on account of the wrongful death of an individual of whom the debtor was a dependent, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor;

C. A payment under a life insurance contract that insured the life of an individual of whom the debtor was a dependent on the date of the individual's death, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor;

D. A payment, not to exceed $7,500, on account of personal bodily injury, not including pain and suffering or compensation for actual pecuniary loss, of the debtor or an individual of whom the debtor is a dependent; or

E. A payment in compensation of loss of future earnings of the debtor or an individual of whom the debtor is or was a dependent, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor.

Moreover, since originally enacted by P.L. 1971, ch. 408, § 1, section 3131 has been changed to make formerly unreachable property available to judgment creditors. Section 3131(2) now provides that property partially exempt from attachment and execution may nevertheless be sold to satisfy a judgment:

[T]he court shall order the sale by the judgment creditor of property owned by the judgment debtor in full or partial satisfaction of the amount owed on the judgment ... [w]hen wholly nonexempt property is not available to fully satisfy the judgment and it is determined that the value of partially exempt property is greater than the exemption available for that item and the property cannot practically be divided into its exempt and non exempt portions ...

14 M.R.S.A. § 3131(2)(B).

Thus, contrary to the District Court's ruling, the unqualified statutory language gave it authority to order Petit to "turn over" her pending malpractice claim to New England Mortgage in partial or full satisfaction of the judgment it holds against Petit. That order would have had the effect of a lien on the pending legal malpractice cause of action and any judgment or settlement obtained by Petit. That lien is established by subsection 9 of section 3131:

**Lien.** An order entered pursuant to this section shall constitute a lien against the property which is the subject of the order and against the proceeds of any disposition of the property by the judgment debtor which occurs at any time after entry of the order. The lien shall extend to proceeds of any disposition of the property, real or personal, subject to the lien of the judgment creditor to the extent that a secured party would have an interest in the proceeds under Title 11, section 9–306.

14 M.R.S.A. § 3131(9). The court in its opinion has paraphrased the quoted subsection 9 (*see* Maj.Op. at 1055) in a way that may give the impression that the subsec-

tion refers generally to all of the provisions of article 9 of the Uniform Commercial Code, including the provision that prevents the giving of a security interest in a tort suit, 11 M.R.S.A. § 9–104(11) (Supp.1990). In reality, subsection 9 refers specifically only to 11 M.R.S.A. § 9–306 (1964 & Supp. 1990). I read subsection 9's reference to section 9–306 to be nothing more than an effort to apply in a short-hand fashion the priority rules for proceeds set forth in that section of the Commercial Code to the lien created by a turnover order. Had the legislature intended section 3131 to be governed by all of article 9, section 3131 would have said so. Furthermore, the mere fact that article 9 would prevent the voluntary creation of a security interest in a tort suit such as Petit's for legal malpractice does not mean that a statutory lien could not be imposed. In the priority rules of article 9, "lien creditors" are distinguished from the holders of secured interests. *See* 11 M.R. S.A. § 9–301 (Supp.1990). Even if any lien that New England Mortgage were to obtain on Petit's proceeds from the malpractice suit in the form of a settlement or judgment could not amount to a security interest, New England Mortgage would still benefit from a creditor's lien that would place it in a better position with respect to its judgment against Petit than any later lienholder.

The court's rationale, implicit or explicit, for deciding that Petit's cause of action is not subject to a turnover order and lien because it would not have been attachable or assignable at common law is shaky at best in its underlying premise. The common law of Maine considers Petit's legal malpractice claim one for an economic harm arising from a contractual relationship. *See Thurston v. Continental Cas. Co.*, 567 A.2d 922, 923 (Me.1989). None of

the traditional reasons for preventing assignment of tort claims for personal injuries is relevant here. *See Rice v. Stone*, 83 Mass. (1 Allen) 566, 569–70 (1861) (common law prevented assignment of personal torts because personal harms could not be valued in an economic sense, because a third party could not represent the feelings "of one whose reputation or domestic peace has been destroyed," and because "litigious persons, whether rich or poor, [would] harass and annoy others, if they were allowed to purchase claims for pain and suffering"). There would be no more reason in this case to prevent Petit from making a voluntary assignment to New England Mortgage than there was in *Thurston*, where we allowed an assignment of a claim by a plaintiff in a malpractice action who had been a defendant in an underlying products liability action, to the plaintiff who had prevailed in the underlying action.[1] Moreover, because of the rule of law laid down in *Thurston*, New England Mortgage is at risk if Petit assigns her interest in the pending suit, her only substantial asset, to a third party.

In any event, whatever the status of an assignment of a legal malpractice claim was at common law or is today, there is no reason to believe that the legislature found any common law principles regarding the nonassignment of tort claims so overwhelmingly compelling that it felt bound to follow them when it enacted the statute. The statute's "clear and explicit language" allowing a judgment creditor to reach all but a limited list of exempt forms of property is itself an "abrogation" of the common law. *Cf. Rubin v. Josephson*, 478 A.2d 665, 671 (Me.1984) ("we will not interpret a statute as modifying the common law in the absence of clear and explicit language showing such modification or ab-

---

**1.** The court's opinion cites *Thurston* for the proposition that "Petit could not voluntarily assign her malpractice action to New England Mortgage because the latter has neither the intimate connection nor the clear interest in the claim necessary to become a party to that action" (Maj. Op. at 1056). Although *Thurston* involved an assignee who was connected to the

underlying action in which the alleged malpractice occurred, the court did not expressly limit assignment to that factual scenario. On the contrary, the court specifically noted that it was not presented with the assignment of a claim to an unrelated assignee. *See Thurston v. Continental Cas. Co.*, 567 A.2d 922, 923 (Me.1989).

rogation was intended"). In light of the broad purpose of the disclosure statute, "to provide an efficient procedure of the enforcement of money judgments," 14 M.R. S.A. § 3120, and the plain language of section 3131(1), I believe New England Mortgage is statutorily entitled to reach Petit's cause of action to satisfy its judgment.